IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| JONATHAN CHARLES BERTELSEN, | CV 16-2-BU-JCL |
| Plaintiff, | |
| vs. | ORDER |
| CITIMORTGAGE, INC., and JOHN DOES 1-10, | |
| Defendants. | |

Before the Court is Defendant CitiMortgage, Inc.'s ("Citi") Fed. R. Civ. P.

12(b)(6) motion to dismiss Plaintiff Jonathan Bertelsen's complaint. For the

reasons discussed, the Court deems it appropriate to grant the motion in part, and

dismiss Bertelsen's claims for negligence, violations of the Montana Consumer

Protection Act, and breach of contract predicated upon Citi's property inspections.

## I.    Background

In 2003 Plaintiff Jonathan Bertelsen obtained a loan in the amount of

$305,000 memorialized in a promissory note. The loan and promissory note were

secured by a deed of trust pledging residential real property in Bozeman, Montana.

Citi serviced Bertelsen's loan on behalf of the lender.

In 2008 Bertelsen"was in imminent threat of default", so he inquired of Citi

1

what options might be available to him to avoid default and ultimately foreclosure. He alleges "Citi advised him that he must be in default before they [sic] could speak with him about a modification." (Doc. 9 at ¶ 8.) According to Bertelsen he viewed Citi's statement as "advice" that he should default and then seek a loan modification which he did.

For the next five years Bertelsen worked with Citi to provide all the required information and documentation to support his several applications for a loan modification. And although Citi told Bertelsen it was considering his applications, it also referred his account for foreclosure several times and set foreclosure sale dates.

In November 2009, Citi informed Bertelsen he did not qualify for the Home Affordable Modification Program ("HAMP") – a federal program to assist borrowers with existing mortgages – because the investor on his loan did not participate in the program. Nonetheless, Citi informed Bertelsen he could apply for hardship assistance or other loan modifications, and Bertelsen submitted several applications. But Citi denied Bertelsen's applications. This cycle repeated several times over the years.

On December 8, 2011, Bertelsen filed a petition for Chapter 13 bankruptcy relief. But that petition was dismissed in October, 2013.

Later in 2013, Citi again advised Bertelsen to reapply for a modification, and for hardship treatment which again he did. But on November 26, 2013, Citi informed Bertelsen he did not qualify for a modification due to "investor guidelines."

Nonetheless, around December 25, 2013, Citi informed Bertelsen it was reviewing his request for assistance. Citi requested further supporting documents from Bertelsen which he provided.

On January 2, 2014, Citi informed Bertelsen it was referring his loan for foreclosure, but also advised him he may be eligible for a loan modification. Citi's attorney told Bertelsen he owed $3,500 for attorneys' fees.

By July 2014, and continuing through January, 2015, on multiple occasions Citi told Bertelsen he needed to, yet again, submit further supporting documents and information for his application. Bertelsen consistently provided the requested information.

In January 2015, Citi scheduled another foreclosure sale, but later cancelled the sale. Citi also informed Bertelsen he owed $5,000 in attorneys' fees, and $2,300 for servicing fees.

In 2015, continuing through July 17, 2015, Citi vacillated numerous times between telling Bertelsen that his application for a loan modification was complete

3

and also telling him he needed to submit additional supporting documents to complete his application. On August 12, 2015, Citi denied Bertelsen's applications for both a HAMP modification and a supplemental modification. Bertelsen was again told the investor on his loan did not authorize HAMP modifications. Nonetheless, on September 23, 2015, Citi again told Bertelsen he could apply for a loan modification.

In September 2015, a foreclosure sale was scheduled. The notice of the sale included $9,661 in fees and expenses due from Bertelsen.

Finally, on October 9, 2015, Citi again solicited Bertelsen to apply for hardship assistance.

Bertelsen alleges all of Citi's conduct caused him to suffer damages including lost time, lost income, lost money, incidental expenses and emotional distress. And he alleges he will suffer irreparable harm if his home is sold while this case is pending.

Bertelsen advances numerous claims for relief under Montana law. He asserts claims for violations of the Montana Consumer Protection Act, negligence, tortious bad faith, breach of contract, constructive fraud and punitive damages. He also requests declaratory and injunctive relief barring any foreclosure sale of his property.

## II.    Applicable Law

### A.    Rule 12(b)(6) Motion to Dismiss Standards

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A dismissal for failure to state a claim under Rule 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990).  To survive a motion to dismiss, a plaintiff's complaint must have sufficient facts "to state a facially plausible claim to relief."  *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).  The court accepts all factual allegations in the complaint as true and construes the pleadings in the light most favorable to the plaintiff.  *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).  Conclusory allegations and unwarranted inferences, however, are insufficient to defeat a motion to dismiss.  *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011).

### B.    Application of Montana Law

In this diversity action, the Court applies the substantive law of Montana, the forum state.  *Medical Laboratory Mgmt. Consultants v. American*

*Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002).

## III.  Discussion

### A.  Judicial Estoppel

Citi argues Bertelsen is judicially estopped from advancing claims in this action which accrued before his bankruptcy petition was dismissed on October 1, 2013, because he did not identify those claims as an asset in his bankruptcy action. In response, Bertelsen concedes Citi's judicial estoppel argument has merit.  *See Ah Quin v. County of Kauai Dept. of Transportation*, 733 F.3d 267, 271 (9th Cir. 2013) (concluding that where a debtor possesses a legal claim against a third party, but the debtor omits the claim from the debtor's petition for bankruptcy relief, then the doctrine of judicial estoppel bars the debtor from pursuing the legal claim against the third party in a subsequent civil action).  Therefore, Citi's motion is granted in this respect, and all of Bertelsen's claims arising from Citi's conduct committed prior to October 1, 2013, are dismissed.

### B.  Negligence

Bertelsen's complaint advances a claim for negligence.  He alleges Citi owed him a duty to "perform the modification process in a manner that would not cause harm to [him]."  (Doc. 9 at ¶ 57.)  He alleges Citi "advised" him he "may qualify" for a loan modification, but it provided him with confusing and

conflicting information regarding the modification process, failed to evaluate him for a modification, and failed to timely determine his eligibility for a modification. (*Id*.) Finally, he alleges Citi owed him "a duty to comply with the Small Tract Financing Act." (*Id*. at ¶ 58.) Bertelsen alleges Citi's conduct "caused[,] and then increased[,] the deficiency Bertelsen allegedly owed to Citi." (*Id*. at ¶ 57.)

Citi argues Bertelsen's claims of negligence fail to implicate a legal duty of care under the circumstances pled in his complaint. Specifically, it argues its alleged conduct did not give rise to a fiduciary duty that it owed to Bertelsen. (Doc. 6 at 19 of 30 n.3.)

A cause of action for negligence requires the plaintiff to prove four essential elements: duty, breach, causation, and damages. *Peterson v. Eichhorn*, 189 P.3d 615, 620-21 (Mont. 2008). The question of whether a legal duty exists is an issue of law for the court to resolve (*Slack v. Landmark Co.*, 267 P.3d 6, 10 (Mont. 2011), and the scope or extent of a legal duty "must necessarily be adjudicated upon a case-by-case basis." *Larson-Murphy v. Steiner*, 15 P.3d 1205, 1212 (Mont. 2000).

Under Montana law, the ordinary banking or lending relationship between a bank and its customer is a simple, arms-length, debtor/creditor relationship. *Morrow v. Bank of America, N.A.*, 324 P.3d 1167, 1177 (Mont. 2014) (citation

omitted).  That common relationship does not impose fiduciary responsibilities upon the lender with respect to its conduct towards a borrower.  *Id*.  Thus, with respect to an existing loan, a lender "has no duty to modify or renegotiate a defaulted loan[]" for the benefit of a borrower.  *Id*.

In some complex banking and lending transactions, however, a lender may become a financial advisor to the customer, thereby creating a relationship of trust and confidence.  *Morrow*, 324 P.3d at 1177 (citation omitted).  Thus, in certain circumstances where a bank "goes beyond the ordinary role of a lender [...] and actively advises customers in the conduct of their affairs, the bank may owe a fiduciary duty."  *Id*.  But, to be sure, "[i]f the borrower has not been advised by the bank or has not relied on that advice, no fiduciary relationship exists."  *Id*.

In *Morrow*, the borrowers contacted the lender to discuss a modification of their loan.  The lender responded to the borrowers by "advis[ing] them it would be in their best interests to deliberately miss a payment and default on their loan[, and the borrowers...] relied on this advice when they intentionally defaulted on their mortgage [to their detriment] hoping to qualify for a modification."  *Morrow*, 324 P.3d at 1178.  The borrowers "defaulted only at [the lender's] direction."  *Id*. 324 P.3d at 1181.  The lender also advised the borrowers to pay a reduced monthly loan payment amount.  Under those circumstances, the court concluded that the

lender's advice was "not the type of advice 'common in the usual arms-length debtor/creditor relationship.'" *Id*. 324 P.3d at 1178. Once the lender provided its financial advice it created a fiduciary relationship with the borrowers and, consequently, after the borrowers' loan was in default "they had little choice but to continue placing their trust in the bank." *Id*.

Bertelsen argues his allegations establish that Citi was subject to a fiduciary duty. In 2008, when he inquired with Citi about his options for modifying his loan payments, "Citi advised him that he must be in default before they [sic] could speak with him about a modification." (Doc. 9 at ¶ 8.) He contends this "advice" imposed a fiduciary duty upon Citi, and he relied on that advice to his financial detriment.

But as conceded by Bertelsen, judicial estoppel bars his claim that Citi subjected itself to a fiduciary duty by giving the referenced "advice" in 2008. That advice could only have given rise to a cause of action which accrued prior to the dismissal of Bertelsen's bankruptcy action in 2013.

Bertelsen next argues Citi is liable because in 2015 it provided him with inconsistent and contradictory information relative to his application for a loan modification. For example, he complains Citi informed him he "may be eligible for a loan modification" (doc. 9 at ¶ 30), yet Citi consistently denied his

applications. But it is beyond dispute that, as a matter of law, a lender is not subject to a legal duty to modify or renegotiate a borrower's loan. *Morrow*, 324 P.3d at 1177. Thus, Citi's conduct in this regard does not give rise to liability.

Additionally, Bertelsen argues Citi is liable because it provided him with contradictory information as follows: On March 10, 2015, Citi informed him his application was complete, but then on March 12, 2015, it told him it still needed more information and documents from Bertelsen to complete his application. In reliance upon *Morrow*, he contends this contradictory information violates a fiduciary duty Citi owed. But Bertelsen's reliance upon *Morrow* is misplaced.

In *Morrow*, the Court addressed a situation where a lender provided confusing, misleading and conflicting information to a borrower which subjected the lender to liability. In finding grounds for liability, the Court looked to federal regulatory guidelines under the HAMP program which require lenders to, inter alia:

> - provide information to assist a borrower in understanding both the loan modification terms and the modification process;
>
> - engage in communications which minimize confusion and reduce risks in the transaction;
>
> - provide timely and appropriate responses and resolutions to inquiries and complaints;
>
> - determine the borrower's eligibility for a modification; and

10

- promptly communicate a borrower's ineligibility to the borrower. *Morrow*, 324 P.3d at 1179.

But the Court in *Morrow* concluded the referenced requirements under HAMP, by themselves, did not impose any legal duty or standard upon a lender. *Morrow*, 324 P.3d at 1178. The Court made clear that the relevant HAMP standards prohibiting a lender from providing confusing information could "define the standards" of care, but only if the evidence otherwise "establishes the basis for imposition of [...] a duty[]" in the first place. *Morrow*, 324 P.3d at 1179. The standards under HAMP would only "provide evidence of a breach of an already existing duty[]" – they do not give rise to a duty. *Id.* at 1178.

Based on *Morrow*, Bertelsen's allegations complaining that Citi provided him with contradictory and confusing information relative to his application for a loan modification fail to invoke a duty of care, and are insufficient, by themselves, to support a claim for negligence. Bertelsen does not allege that after October 1, 2013, Citi gave him any further "advice", to his detriment, as to the conduct of his affairs which would have triggered a legal duty and the resulting application of the HAMP standards.

Bertelsen additionally argues Citi was subject to a general, common law duty of reasonable care. Undisputedly, the common law requires that all

individuals and entities must "use the degree of care that an ordinarily prudent person would have used under the same circumstance." *Barr v. Great Falls International Airport Authority*, 107 P.3d 471, (2005). *See also* Mont. Code Ann. § 27-1-701 (imposing liability for a person's want of ordinary care or skill in the management of the person's property or person). Thus, a lender is subject to a common law duty of reasonable care that it owes to a borrower. *See Joseph v. Bank of America N.A.*, 2012 WL 6100037, *3-4 (D. Mont. 2012) (citing *Mattingly v. First Bank of Lincoln*, 947 P.2d 66, 70-71 (Mont. 1997)).

But the only specific general duty of reasonable care which Bertelsen expressly identifies as applicable in this case is his assertion that Citi owed a duty of care with respect to its conduct in communicating information to him about the loan modification process. (Doc. 14 at 22 of 36.) And all of his arguments and the decisional law on which he relies pertain to an independent cause of action for negligent misrepresentation. (*Id*. at 20-22.) But, significantly, Bertelsen's complaint does not include a separate cause of action for negligent misrepresentation. His pleading does not set forth allegations addressing any of the separate elements of a claim for negligent misrepresentation. *See Mattingly*, 947 P.2d at 70. Therefore, Bertelsen's arguments in support of a claim for

negligent misrepresentation are unavailing.[1]

Bertelsen next argues Citi was subject to the common law duty of reasonable care as defined under the provisions of the Small Tract Financing Act of Montana, Mont. Code Ann. § 71-1-301 et seq. ("Financing Act"). The Financing Act imposes certain duties upon beneficiaries and trustees, and those duties can serve as the standards of care for an ordinary negligence claim. *See Joseph v. Bank of America N.A.*, 2012 WL 6100037, *3-4 (D. Mont. 2012) (citing *Knucklehead Land Company, Inc. v. Accutitle, Inc.*, 172 P.3d 116, 120-21 (Mont. 2007)). But Bertelsen does not identify any specific duty set forth in the Financing Act which should serve as the ground for his negligence claim. (*See* Doc. 9 at ¶ 58, and Doc. 14 at 22-23 of 36.) Absent allegations identifying and invoking a specific duty or standard of care required under the Financing Act, Bertelsen's allegations fail to state a claim of negligence predicated upon a violation of the Financing Act.

Due to the absence of an applicable duty of care invoked under the circumstances of this case, Bertelsen's claims of negligence are dismissed.

### C.    Montana Consumer Protection Act

The Montana Consumer Protection Act applies to lenders and prohibits

---

[1]Bertelsen's arguments in support of a duty to provide an accurate, full disclosure is relevant only to his claim for constructive fraud.

"[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" Mont. Code Ann. § 30-14-103. *Morrow*, 324 P.3d at 1184. An act or practice is deemed "unfair if it 'offends established public policy and ... is either immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Id*. (citation omitted). "A consumer who suffers any ascertainable loss of money or property" may bring an action under the Act. Mont. Code Ann. § 30-14-133(1).

Citi argues Bertelsen's Consumer Protection Act claims do not sufficiently allege that it engaged in any unfair or deceptive acts or practices as defined under the Act in *Morrow*. The Court agrees.

Under the Consumer Protection Act, unfair or deceptive acts or practices include circumstances where a defendant "states that a transaction involves rights, remedies or obligations that it does not involve." *Morrow*, 324 P.3d at 1184 (citation omitted). Bertelsen contends Citi advised him "that he qualified for a [loan] modification that he could never get." (Doc. 14 at 14 of 36.) Bertelsen relies upon this Court's decision in *Ridings v. IndyMac Mortgage Services, et al.*, concluding that allegations indicating a loan servicer told borrowers "they qualified" for a loan modification were sufficient to state a claim for relief under the Act. *Ridings v. IndyMac Mortgage Services, et al.*, CV 14-277-M-DLC, Doc.

14

36 at 7 (D. Mont. April 10, 2015).

But the Court finds the allegations in Bertelsen's complaint do not support his contention in his brief that Citi told him he "qualified" for a loan modification. To the contrary, Bertelsen consistently alleges in his pleading that Citi informed him he "may qualify", or "may be eligible" for a loan modification. (Doc. 9 at ¶¶ 19, 22, 30, and 57.) Consequently, since Bertelsen's pleading does not allege that Citi affirmatively told him his application involved rights or remedies that it actually did not involve, he has not stated a claim under the Consumer Protection Act.

Additionally, Bertelsen argues Citi is liable under the Consumer Protection Act based on its conduct in allegedly giving him inconsistent and contradictory information relative to his application for a loan modification and his loan servicing status. Specifically, after October 1, 2013, Citi inconsistently told Bertelsen that his applications for a loan modification were complete, while at the same time informed him his applications were not complete. Thus, he argues the delays Citi caused, and Citi's conduct in providing inconsistent information, constitute unfair or deceptive practices as found in *Morrow*, 324 P.3d at 1184-85. The Court disagrees.

The circumstances in *Morrow* were more egregious and detrimental to the

borrowers because the lender's conduct involved more than just delays and inconsistent information like what Bertelsen experienced here. Significantly, the Court in *Morrow* found the delays, the inconsistent information, and the growth of the borrowers' default and arrearages were unfair and deceptive only because the lender had first advised and instructed the borrowers to miss a loan payment, to default on the loan, and to make reduced monthly payments, thereby causing harm to the borrowers. *Morrow*, 324 P.3d at 1184-85. In *Morrow* it was the lender's initial adverse advice and instructions which rendered its subsequent conduct – delays and inconsistent communications – unfair or deceptive to the borrowers' detriment. *Id*.

Here, Bertelsen's allegations do not include any facts suggesting Citi ever affirmatively advised him to take any action to his detriment. Citi did not instruct him to default on his loan, or to get behind on his payments. Thus, the circumstances here are distinguishable from the circumstances in *Morrow*, and any delays or conflicting information provided by Citi, standing alone, do not constitute unfair or deceptive acts.

Bertelsen further cites to this Court's decision in *Olson v. Bank of America, et al.*, which found allegations sufficient to state a claim under the Consumer Protection Act. Specifically, the lender in *Olson* similarly lost or mishandled the

borrowers' application documents, provided inconsistent information as to the borrowers' loan servicing status, and caused delays. *Olson v. Bank of America, et al.*, CV 14-160-BLG-CSO, Doc. 32 at 36 (D. Mont. May 28, 2015).

But as with the circumstances in *Morrow*, the lender's alleged conduct in *Olson* was more egregious and detrimental to the borrowers than the conduct Citi allegedly engaged in towards Bertelsen. In *Olson*, the lender advised the borrowers to make whatever monthly payment amount they could, and the borrowers followed that advice to their detriment. *Olson*, Doc. 32 at 4. The lender told the borrowers that the Notices of Intent to Accelerate it sent to the borrowers were "a mere formality", and that the borrowers' application for a modification looked good. *Id*. Furthermore, the lender misapplied, and failed to properly account for, monthly payments it received from the borrowers, and it also denied the borrowers' application for a loan modification after it had previously informed them that they "qualified" for a modification. *Id*., Doc. 32 at 36.

Again, Bertelsen does not allege Citi advised him to take any action to his detriment. Citi did not advise Bertelsen he could make reduced monthly payments, and it did not inform him he actually qualified for a loan modification. To the contrary, Bertelsen asserts Citi "regularly advised Bertelsen the he was delinquent." (Doc. 9 at ¶ 9.) Thus, the delays or the conflicting information

provided by Citi, standing alone, do not constitute unfair or deceptive acts.

In response to Citi's motion to dismiss, Bertelsen does not specifically argue that any other aspect of Citi's conduct qualifies as unfair or deceptive. Therefore, Bertelsen's allegations under the Consumer Protection Act fail to state a claim for relief.

After briefing on Citi's motion to dismiss was complete, Bertelsen filed a notice of supplemental authority citing to *Jacobson v. Bayview Loan Servicing, LLC*, ___ P.3d ___, 2016 WL 2344150 (Mont. 2016), decided May 4, 2016. Bertelsen suggests *Jacobson* supports his Consumer Protection Act claims. The Court disagrees.

In *Jacobson* the borrowers experienced a period of financial hardship and resulting difficulty making their loan payments. The borrowers attempted to negotiate a loan modification with the lender and avoid foreclosure, and the lender instructed the borrowers "to stop making payments on their loan [...because that] would help them qualify for a loan modification." *Jacobson*, 2016 WL 2344150 at 2. But instead of actively pursuing a loan modification offer, the lender proceeded with foreclosure efforts.

The court in *Jacobson* concluded the lender – in the course of its conduct and negotiations with, and representations to, the borrowers – violated the

Montana Consumer Protection Act.  Those violations were, in part, predicated upon the lenders' violations of the federal Fair Debt Collections Practices Act which were based on the lender's conduct as follows:

> (1) The lender instructed the borrowers to stop making loan payments to enable them to get a loan modification, but the lender instead pursued foreclosure;
>
> (2) The lender made misrepresentations to the borrowers regarding their rights to cure and reinstate the loan;
>
> (3) The lender made misrepresentations to the borrowers as to the correct identity of the actual beneficiary under the mortgage documents, and made misrepresentations as to assignments of the beneficial interests and made "false assignments" of the beneficial interests; and
>
> (4) The lender communicated with the borrowers at a time when the lender knew the borrowers were represented by an attorney.

*Jacobson*, 2016 WL 2344150 at 7-12.

The court in *Jacobson* found the lender committed additional violations of the Consumer Protection Act.  The court, after first emphasizing again that the lender initially instructed the borrowers to stop paying on their loan, found the lender liable because (1) it failed to provide the borrowers an option for curing their default in the five days prior to the trustee's sale in violation of a Consumer Protection Act regulation, and (2) after the trial in the district court on the merits of borrowers' claims, the lender attempted to collect additional attorneys fees and expenses.  The court concluded all of the foregoing conduct violated the

Consumer Protection Act.

The Court finds the circumstances in the *Jacobson* case are materially different from the facts in this case, and involved a lender's conduct that was substantively more detrimental to the borrowers than the circumstances Bertelsen experienced in this case. Here, at most, Citi provided Bertelsen with confusing or conflicting information regarding the status of his loan application, and his ability to possibly obtain a loan modification. But unlike the circumstances in *Jacobson*, here Citi had not first jeopardized Bertelsen's loan status by instructing him to default on his loan, and thereafter engaged in any of the type of conduct described in *Jacobson* which subjected the lender to liability. Therefore, the facts in *Jacobson* are substantive distinguishable from those in this case and, for the reasons discussed, Bertelsen's Consumer Protection Act claims are subject to dismissal.

### D. <u>Implied Covenant of Good Faith and Fair Dealing</u>

Bertelsen's complaint advances a claim alleging Citi is liable for breach of the implied covenant of good faith and fair dealing. He alleges Citi serviced his loan on behalf of the lender, and that he and Citi, therefore, are both parties to the underlying deed of trust and promissory note that Bertelsen signed. He alleges he was in an inherently unequal bargaining position with Citi, and that Citi exerted

complete control over him relative to the servicing of his loan, the foreclosure process, and the loan modification review process.

Citi moves to dismiss Bertelsen's good faith and fair dealing claim. It contends that neither the deed of trust, nor the promissory note contain any contractual provision relevant to, or requiring, its review of Bertelsen's applications for a loan modification. It argues that absent the existence of an applicable contract provision, there can be no breach of the implied covenant of good faith and fair dealing. But for the reasons discussed, the Court concludes the covenant is not so narrowly limited.

As a matter of law, every enforceable contract "contains an implied covenant of good faith and fair dealing." *Knucklehead Land Co., Inc. v. Accutitle, Inc.*, 172 P.3d 116, 121 (Mont. 2007) (citation and quotation omitted). "[T]he covenant is a mutual promise implied in every contract that the parties will deal with each other in good faith, and not attempt to deprive the other party of the benefits of the contract through dishonesty or abuse of discretion in performance." *Phelps v. Frampton*, 170 P.3d 474, 482 (Mont. 2007) (citation and quotation omitted). The standard of conduct imposed by the implied covenant is "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." *McCoy v. First Citizens Bank*, 148 P.3d 677, 681 (Mont. 2006) (quoting

*Story v. City of Bozeman*, 791 P.2d 767, 775 (Mont. 1990)). A plaintiff need not first establish a breach of an express provision of the contract as a prerequisite to a claim for a breach of the implied covenant. *Id*.

Bertelsen alleges he and Citi are parties to the deed of trust and promissory note. Those allegations are sufficient to implicate the implied covenant, and to subject Citi to the standards of the covenant. *Fischer v. Ocwen Loan Servicing, LLC*, 2015 WL 3756008, *7 (D. Mont. 2015). Contrary to Citi's argument, Bertelsen need not identify a provision of either agreement which afforded Citi some discretion as to its loan modification authority. *See Fischer*, 2015 WL 3756008 at *6-7.

Instead, Bertelsen need only establish the circumstances of his relationship with Citi rendered it a "special relationship." A claim for the tortious breach of the implied covenant of good faith and fair dealing in a contract applies in "exceptional circumstances" in which a plaintiff "must show that the parties are in a 'special relationship' to one another." *Ammondson v. Northwestern Corp.*, 220 P.3d 1, 16 (Mont. 2009). The existence of a "special relationship" requires consideration of the following elements:

> (1) the contract must be such that the parties are in inherently unequal bargaining positions; [and] (2) the motivation for entering the contract must be a non-profit motivation, i.e., to secure peace of mind, security, future protection; [and] (3) ordinary contract damages are not adequate because (a)

they do not require the party in the superior position to account for its actions, and (b) they do not make the inferior party "whole"; [and] (4) one party is especially vulnerable because of the type of harm it may suffer and of necessity places trust in the other party to perform; and (5) the other party is aware of this vulnerability.

*Id*. (citing *Story v. City of Bozeman*, 791 P.2d 767, 776 (Mont. 1990)). Citi argues Bertelsen's pleading does not include sufficient factual allegations to plausibly satisfy all the elements of the requisite special relationship. But the Court disagrees.

Citi specifically challenges the sufficiency of Bertelsen's allegation that his motivation for entering the contractual relationship with Citi was a non-profit motivation. Citi argues Bertelsen's loan modification discussions with it were not prompted by a non-profit motivation. But, Bertelsen's asserted contractual relationship with Citi is by virtue of the underlying deed of trust and promissory note, not his loan modification discussions with Citi. Bertelsen entered those agreements for the non-profit purpose of owning a home – the agreements enabled him to obtain a loan, to be repaid with interest, in the amount of $305,000 to purchase his residence.

Further, the Court finds Bertelsen's cause of action for "tortious bad faith" sufficiently addresses, and plausibly supports, each of the five elements of a special relationship. (Doc. 9 at ¶¶ 61-68.) Thus, Citi's motion is denied as to the

claim for tortious bad faith.

### E.    <u>Breach of Contract</u>

Bertelsen advances a claim for Citi's alleged breach of contract. He relies upon the deed of trust which permits the lender to conduct, and charge for, only a reasonable number of property inspections. He alleges Citi conducted an unreasonable number of property inspections at a time when he was actively seeking to protect and retain the property. Bertelsen also alleges Citi breached the deed of trust by failing to comply with the Small Tract Financing Act of Montana, Mont. Code Ann. § 71-1-301 et seq., and that it breached the implied covenant of good faith and fair dealing giving rise to a contract claim. (Doc. 9 at ¶¶ 72-73.)

Citi argues Bertelsen cannot maintain a breach of contract claim for its alleged breach of the property inspection provision in the deed of trust because he had first materially breached the promissory note and deed of trust when he defaulted on his obligation to repay the loan. As a matter of law, "a party in material breach [cannot maintain] a breach of contract action against the other contracting party." *AAA Constructions of Missoula, LLC v. Choice Land Corp. et al.*, 264 P.3d 709, 715 (Mont. 2011). "A material breach is one that touches the fundamental purpose of the contract and defeats the object of the parties in making the contract." *R.C. Hobbs Enterprises, LLC v. J.G.L. Distributing, Inc.*, 104 P.3d

503, 508 (Mont. 2004).

Bertelsen suggests his default – his failure to make his required monthly payments – under the deed of trust and promissory note does not qualify as a material breach.  He cites to *Mullins v. GMAC Mortgage, LLC*, 2011 WL 1298777 (D. W. Va. 2013) for the proposition that a borrower's failure to continue with required monthly mortgage payments does not relieve the lender of its obligations under the deed of trust and promissory note.  But the decision in *Mullins* is not so broad.

In *Mullins* the borrowers alleged the lender breached the deed of trust when it pursued foreclosure without first engaging in loss mitigation efforts after the borrowers defaulted as required under the deed of trust.  The lender argued the borrowers were barred from bringing their breach of contract claim against it because the borrowers had first breached the contract by defaulting on their monthly payment obligations.

The court in *Mullins* applied the "first breach rule" based upon a definition of a "material" breach similar to the definition employed in *R.C. Hobbs Enterprises, LLC*, and recognized the rule does not apply to a breach that was not a material breach.   *Mullins*, 2011 WL 1298777 at *3.  The contract in *Mullins* specifically contemplated that a borrower might default on monthly payments, and

as a result the contract obligated the lender to explore loss mitigation options prior to pursuing its foreclosure remedy. *Id*. at *2-3. Thus, in substance, the court concluded the borrowers' default on their payment obligations was not a material breach relative to the lender's subsequent obligations triggered by the borrowers' default, and the lender still had to meet those obligations. In that situation, the court concluded the application of the "first breach rule" would improperly render inapplicable those specific contract provisions that were triggered by the borrowers' default. *Id*. at *4.

Here, Bertelsen does not allege that Citi's contractual obligation to conduct only reasonable inspections of the property was triggered only after he was in default on his loan. He does not allege it was a contractual obligation with which Citi must comply even after Bertelsen's default. Consequently, Bertelsen's failure to continue his required monthly loan payments in 2008 was a material breach relative to Citi's obligation to conduct only reasonable property inspections.[2] Citi's motion is granted in this respect.

Bertelsen accurately points out that Citi did not expressly move to dismiss

---

[2] A party's failure to satisfy a contractual obligation to make a payment to the other party constitutes a "material breach" and, under Montana law, relieves the other party from further performance under the contract. *James Talcott Construction, Inc. v. P & D. Land Enterprises*, 141 P.3d 1200, 1206-07 (Mont. 2006), and *Rogers v. Relyea*, 601 P.2d 37, 40 (Mont. 1979).

his breach of contract claims predicated upon the Small Tract Financing Act of Montana and the implied covenant of good faith and fair dealing. Although Citi's motion addresses the tort claim for breach of the implied covenant of good faith and fair dealing, Citi's arguments do not address that matter as a breach of contract claim. The implied covenant may be actionable as either a breach of contract claim, or a tort claim where a special relationship exists between the parties. *Story v. City of Bozeman*, 791 P.2d 767, 775-76 (Mont. 1990), overruled on other grounds by *Arrowhead School District No. 75, Park County v. Klyap*, 79 P.3d 250, 264 (Mont. 2003). The standard of conduct in either claim is the same. *Story*, 791 P.2d at 776. Thus, in the absence of Citi's motion on the claim, Bertelsen's contract claim for breach of the covenant survives dismissal.

Additionally, because Citi did not expressly move to dismiss Bertelsen's breach of contract claim predicated upon the Small Tract Financing Act of Montana, that claim will survive dismissal.[3]

### F.  Constructive Fraud

Bertelsen alleges Citi is liable for constructive fraud based on its duty to

---

[3]Although Citi argues Bertelsen's breach of contract claim is subject to dismissal because he did not allege any resulting damages, it advanced that argument only with respect to Bertelsen's claim that Citi conducted unreasonable property inspections. (Doc. 6 at 25 of 30; Doc. 15 at 12 of 16.) Citi did not argue that Bertelsen's two other contract claims fail for lack of sufficiently pled damages. Thus, the Court will not address that issue.

disclose accurate information about his loan modification applications.  He alleges

Citi made material misrepresentations to him when it told him (1) he "may

qualify" for a loan modification when it knew he would not qualify, and (2) his

application was complete when it actually was not complete.  (Doc. 9 at ¶ 77.)

> Constructive fraud is statutorily defined in Montana as:
>
> (1) any breach of duty that, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under the person in fault by misleading another person to that person's prejudice or to the prejudice of anyone claiming under that person; or
>
> (2) any act or omission that the law especially declares to be fraudulent, without respect to actual fraud.

Mont. Code Ann. § 28-2-406.  A prima facie claim for constructive fraud requires

facts supporting allegations of:

> a representation; the falsity of the representation; the materiality of the representation; the speaker's knowledge of the representation's falsity or ignorance of its truth; the hearer's ignorance of the representation's falsity; the hearer's reliance upon the truth of the representation; the hearer's right to rely upon the representation; and the hearer's consequent and proximate injury or damage caused by reliance on the representation.

*White v. Longley*, 244 P.3d 753, 759 (Mont. 2010).

Citi moves to dismiss Bertelsen's constructive fraud claims arguing there

exists no legal duty that it owed to Bertelsen.  As discussed, however, Citi was

subject to a duty of disclosure as discussed in *Morrow*.

Constructive fraud requires the existence of a duty of disclosure imposed

upon the defendant.  *Morrow*, 324 P.3d at 1184.  A duty to provide an accurate, full disclosure arises (1) when a person speaks, to ensure the person does not say anything misleading to another, or (2) when one has specialized knowledge of material facts to which the other party does not have access.  *Id*.  Thus, a duty arises where one party has misled another in some way.  *Id*.  As between a lender and a borrower, a lender must not make material misrepresentations to a borrower about the status of the borrower's application for a loan modification.  *Id*.

Based on *Morrow*, Citi was obligated to provide non-misleading information to Bertelsen regarding his application for a loan modification.  Thus, Bertelsen's allegations regarding Citi's representations as to whether he may qualify for a loan modification, and the completeness of his applications, directly invoke this duty.

Citi also argues Bertelsen's constructive fraud claims fail because his allegations do not provide factual particularity as required.  Specifically, Citi argues Bertelsen's allegations do not sufficiently identify who made the offending representations.

Federal Rule of Civil Procedure 9(b) requires that claims of fraud "must state with particularity the circumstances constituting fraud[.]"  *See Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013).  "Rule 9(b)'s particularity

requirement applies to state-law causes of action." *Salameh*, 726 F.3d at 1133 (quoting *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003)). Any claim that "sound[s] in fraud" must comply with Rule 9(b). *Goldberg v. BAC Home Loans Servicing, LP*, 2013 WL 4501014, *4 (S.D. Cal. 2013) (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)). To satisfy the particularity standard a pleading must "'identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'" *Salameh*, 726 F.3d at 1133 (quoting *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)).

The particularity requirement of Rule 9(b), however, must be balanced with the relaxed short-and-plain-statement requirement of Fed. R. Civ. P. 8(a). *Ridings v. IndyMac Mortgage Services, et al.*, CV 14-277-M-DLC, Doc. 36 at 11 (D. Mont. April 10, 2015). Read together, the two rules contemplate general simplicity and flexibility in allegations, requiring only that the defendant be given sufficient notice of the claims to defend and not just deny that the defendant has done anything wrong. *Id*. *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001).

Bertelsen's constructive fraud claims are predicated upon two specific

representations from Citi: (1) It informed him he qualified for a modification when it knew he did not, and (2) it informed him his applications were complete when they were not. Bertelsen's complaint contains sufficient factual information to enable Citi to defend against these claims. He states that on November 26, 2013, Citi informed him he did not qualify for a loan modification due to investor guidelines, but then on January 2, 2014, Citi informed him he may be eligible for a loan modification. (Doc. 9 at ¶¶ 29-30.) Bertelsen also identifies specific dates on which Citi allegedly informed him his application was complete, but it later told him it was not complete. (Doc. 9 at ¶¶ 34, 38-43.) These allegations sufficiently identify the specific representations, and make it plausible that the representations may have been false or misleading when made. That Bertelsen may be unable to identify the specific Citi employees who made the representations at this stage of the litigation is inconsequential.

Citi next argues that Bertelsen's constructive fraud allegations fail to plausibly suggest how it gained any advantage over Bertelsen by virtue of its alleged misprepresentations as required under the statutory description of constructive fraud. Mont. Code Ann. § 28-2-406. Correlatively, Citi also argues Bertelsen does not describe how he suffered any prejudice as a result of the alleged representations because Bertelsen acknowledges Citi had regularly

informed him he was delinquent on his payments.  (Doc. 9 at ¶ 9.)

But the Court finds Bertelsen's allegations sufficiently suggest Citi gained an advantage to Bertelsen's detriment.  Citi's misleading representations allegedly strung out the modification process for several years allowing his debt to grow and allowing Citi to charge Bertelsen attorneys fees, loan servicing fees, and expenses. (Doc. 9 at ¶¶ 30, 36, and 46.)  He alleges he lost time and income, and he incurred expenses.  (Doc. 9 at ¶ 48.)  The growth of Bertelsen's default, in particular, is sufficient prejudice to support his constructive fraud claim.  *Morrow v. Bank of America, N.A.*, 324 P.3d 1167, 1184 (Mont. 2014).  Therefore, Citi's motion is denied with respect to Bertelsen's claims for constructive fraud.

### G.  Punitive Damages

Citi argues Bertelsen's claim for punitive damages is subject to dismissal on the basis that none of his underlying legal claims for relief can survive its motion to dismiss.  *Stipe v. First Interstate Bank-Polson*, 188 P.3d 1063, 1068 (Mont. 2008) (confirming that a recovery of actual damages on a viable underlying claim of liability is required for the recovery of punitive damages).  But since the Court concludes some of Bertelsen's tort claims survive dismissal, Citi's motion to dismiss the punitive damages claim lacks merit.

### H.    Injunctive Relief

Bertelsen includes a claim for injunctive relief in his complaint.  He request declaratory relief establishing that any foreclosure sale of his residence would be void, and an injunction preventing Citi from conducting a foreclosure sale.  (Doc. 9 at ¶¶ 88-89.)

Citi moves to dismiss Bertelsen's claims for equitable relief arguing he has not sufficiently pled those claims.  It asserts there is no causal connection between Bertelsen's prior default on his payments which entitles it to proceed with foreclosure on the property, and Citi's conduct it allegedly committed subsequent to Bertelsen's default which gives rise to Bertelsen's claims for relief.

In response, Bertelsen argues his claims for relief establish that Citi's conduct for which it could be held liable exacerbated his default – caused his default to grow and caused him to incur various fees and expenses – which, in turn, provides grounds for his claim for injunctive relief.

As discussed, Bertelsen's surviving claims sufficiently allege Citi's conduct caused his default to grow, and caused him to incur additional fees and expenses. The additional debt and expenses allegedly hampered Bertelsen's ability to get current on his payment obligations and to cure his default to avoid foreclosure. (*See* Doc. 9 at ¶ 57.)  Thus, Citi's causation argument lacks merit.

Citi advances no other argument for the dismissal of Bertelsen's claims for injunctive relief.  Therefore, its motion is denied in this respect.

## IV.   Conclusion

Based on the foregoing, IT IS HEREBY ORDERED Citi's motion to dismiss is GRANTED in part.  Bertelsen's claims for negligence, violations of the Montana Consumer Protection Act, and breach of contract predicated upon Citi's property inspections are DISMISSED.  But Citi's motion is DENIED in all further respects.

Bertelsen requests that if the Court dismisses one or more of his claims, then he should be granted leave to file an amended complaint.  "[D]ismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment."  *Schneider v. California Department of Corrections*, 151 F.3d 1194, 1196 (9th Cir. 1998) (quoting *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)).

The Court concludes that the claims it is dismissing are sufficiently barred by the applicable law discussed.  Therefore, the Court finds the dismissed claims could not be saved by amendment, and those claims are dismissed with prejudice.

DATED this 14th day of June, 2016.

Jeremiah C. Lynch
United States Magistrate Judge