IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| JONATHAN CHARLES BERTELSEN, | CV 16-2-BU-JCL |
| Plaintiff, | |
| vs. | ORDER |
| CITIMORTGAGE, INC., and JOHN DOES 1-10, | |
| Defendants. | |

Before the Court is Defendant CitiMortgage, Inc.'s ("Citi") Fed. R. Civ. P. 56 motion for summary judgment dismissing Plaintiff Jonathan Bertelsen's claims. For the reasons discussed, the Court deems it appropriate to grant the motion.

## I.   Background

Some time prior to 2003 Plaintiff Jonathan Bertelsen purchased a residence in Bozeman, Montana. He and his sons lived in the home.

In 2003 Bertelsen refinanced his residential real property because interest rates had gone down. He obtained a new loan in the amount of $305,000 memorialized in a promissory note and secured by a deed of trust pledging his real property. Thereafter, Citi serviced Bertelsen's loan on behalf of the lender.

The original lender was ABN AMRO Mortgage Group, Inc. ("AMRO").

But in 2007, AMRO merged into Citi.

In 2008 Bertelsen experienced financial difficulties due to a reduction in his income. As a result he defaulted on his loan obligations – falling about 60 days behind in making his loan payments. At that point Bertelsen reached out to Citi for loan assistance, but Citi informed him it could not discuss options for assistance until he was in default for 90 days.

For the next five years Bertelsen submitted applications for loan modifications or assistance programs to Citi. He worked with Citi to provide information and documentation it requested to support his applications. During that time frame, Citi would review his applications, request additional documents, deny his applications for various programs, but then invite him to again apply for a modification or a loan assistance program. This cycle repeated several times over the years. And although Citi told Bertelsen it was considering his applications, it also referred his account for foreclosure several times and set numerous foreclosure sale dates.

In 2009 or 2010 Bertelsen attempted to make additional payments to Citi on his loan, but they were returned to him. Citi points out, however, the deed of trust permitted it to reject payments if they are insufficient to bring the loan obligations current. He has not tried to make any further payments since 2010.

2

On December 8, 2011, Bertelsen filed a petition for Chapter 13 bankruptcy relief.  The petition was dismissed in October 2013.  Thereafter, Bertelsen continued to work with Citi in an attempt to secure a modification of his loan payment obligations.  For two more years Bertelsen submitted further information and documents as requested by Citi.  During that same time frame Citi again scheduled foreclosure sales of the property which were ultimately cancelled.  Citi informed Bertelsen he owed attorneys' fees, loan servicing fees and expenses as a result of the default and foreclosure processes.

Although Citi invited Bertelsen to apply for various loan modifications or assistance programs, ultimately Citi decided Bertelsen was not eligible for such programs.  Citi never granted Bertelsen a loan modification, but it also has never pursued foreclosure to completion.

Bertelsen alleges all of Citi's recurring conduct – inviting him to apply for loan modifications, but then rejecting his applications – caused him to suffer damages including lost time, lost income, lost money, incidental expenses and emotional distress.  And he alleges he will suffer irreparable harm if his home is sold while this case is pending.

Bertelsen advances numerous claims for relief under Montana law:  (1) violations of the Montana Consumer Protection Act, (2) negligence, (3) tortious

bad faith, (4) breach of contract, (5) constructive fraud, and (6) punitive damages. He also requests declaratory and injunctive relief barring any foreclosure sale of his property.

Upon Citi's motion to dismiss, the Court entered an order on June 14, 2016, dismissing Bertelsen's claim of negligence, his claims under the Montana Consumer Protection Act, and his claim for breach of contract predicated upon Citi's alleged unreasonable inspections of the property.  Also, the Court concluded Bertelsen is judicially estopped from asserting claims that accrued before his bankruptcy petition was dismissed on October 1, 2013.  Thus the claims that remain are only those which Bertelsen can demonstrate accrued after October 1, 2013.

Bertelsen subsequently moved for leave to seek reconsideration of the Court's dismissal of the Montana Consumer Protection Act claim.  The Court granted him leave to do so, and he filed his motion for reconsideration of that claim.  The Court has denied that motion.

In the meantime, Citi has moved for summary judgment on each of Bertelsen's remaining claims for relief.

## II.   Applicable Law

### A.   Rule 56 Motion for Summary Judgment Standards

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A movant may satisfy this burden where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986).  Once the moving party has satisfied his burden, he is entitled to summary judgment if the non-moving party fails to designate by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Cattrett*, 477 U.S.  317, 324 (1986).  In deciding a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party and draws all justifiable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1020-21 (9th Cir. 2007).

### B.   Application of Montana Law

In this diversity action, the Court applies the substantive law of Montana, the forum state. *Medical Laboratory Mgmt. Consultants v. American*

5

*Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002).

## III.    Discussion

### A.    Breach of Contract

#### 1.    First Material Breach

Citi moves for summary judgment dismissing all of Bertelsen's breach of contract claims on the ground that Bertelsen had first materially breached the promissory note and deed of trust in the first instance when he defaulted on his obligations to repay the loan, and to pay taxes and insurance.  As a matter of law, "a party in material breach [cannot maintain] a breach of contract action against the other contracting party."  *AAA Constructions of Missoula, LLC v. Choice Land Corp. et al.*, 264 P.3d 709, 715 (Mont. 2011).  *See also R.C. Hobbs Enterprises, LLC v. J.G.L. Distributing, Inc.*, 104 P.3d 503, 508 (Mont. 2004) (defining material breach).  Specifically, a party's failure to satisfy a contractual obligation to make a payment to the other party constitutes a "material breach" and, under Montana law, relieves the other party from further performance under the contract. *James Talcott Construction, Inc. v. P & D. Land Enterprises*, 141 P.3d 1200, 1206-07 (Mont. 2006), and *Rogers v. Relyea*, 601 P.2d 37, 40 (Mont. 1979).

But as discussed in the June 14, 2016 Order, Bertelsen's default does not excuse any subsequent duties imposed upon Citi that were triggered by Bertelsen's

default.  (Doc. 29 at 25-26 (citing *Mullins v. GMAC Mortgage, LLC*, 2011 WL

1298777 (D. W. Va. 2013)).  Because all of Bertelsen's breach of contract claims

arise from alleged contractual duties imposed upon Citi triggered by Bertelsen's

default, they are not precluded by his initial breach.

### 2.     Small Tract Financing Act

Bertelsen contends Citi breached its contractual obligations by failing to

comply with the Small Tract Financing Act of Montana, Mont. Code Ann. § 71-1-

301 et seq. ("Financing Act").[1]  Bertelsen asserts Citi failed to record with the

county clerk and recorder an assignment of the beneficial interest from the original

lender, AMRO, to Citi when that interest transferred to Citi when AMRO merged

into Citi.  Indeed, Montana law requires that as a condition precedent to

foreclosure "any assignments of the trust indenture by the trustee or the

beneficiary" must be recorded.  Mont. Code Ann. § 71-1-313(1).

But under the express terms of section 71-1-313 the obligation to record an

assignment is triggered only when a trustee or beneficiary actually assigns the

respective interest.  Here, Bertelsen does not dispute that AMRO merged into Citi.

---

[1]The Court will assume, without deciding, that a violation of the Financing Act would constitute a breach of Citi's contractual obligations.  *See Earls v. Chase Bank of Texas, N.A.*, 59 P.3d 364, 368 (Mont. 2002) (incorporating a provision of the Financing Act into the deed of trust).  "Laws existing at the time a contract is formed become part of the contract."  *State ex rel Bullock v. Philip Morris, Inc.*, 217 P.3d 475, 480 (Mont. 2009) (citing *Earls*).

As a matter of law, the merger of AMRO and Citi operated to vest title to real estate and other property interests in Citi, the surviving corporate entity.  Mont. Code Ann. § 35-1-817(1)(b).  *See also Polich v. Burlington Northern, Inc.*, 942 F.2d 1467, 1471 (9th Cir. 1991) (construing Montana law).  Thus, because the transfer of the beneficial interest to Citi occurred upon the merger, there existed no assignment for Citi to record.

Bertelsen further asserts Citi breached the Financing Act when it charged him attorneys' fees in excess of the amount permitted under the Financing Act at Mont. Code Ann. § 71-1-320.  The Court disagrees.

The Financing Act permits a grantor who is in default to reinstate the loan. A defaulted grantor may pay to the beneficiary "the entire amount then due[,]" including costs, expenses, trustee's fees and attorney's fees, at which point all the foreclosure proceedings and the trustee's sale must be cancelled, and the deed of trust is "reinstated[.]"  Mont. Code Ann. § 71-1-312(1) & (2).  If the entire amount due is paid and the deed of trust is reinstated under section 71-1-312, then the fees to be paid under section 71-1-312 are limited as follows:

> If prior to the trustee's sale the obligation and the trust indenture shall be reinstated in accordance with provisions of 71-1-312, the reasonable trustees' fees and attorneys' fees to be charged to the grantor shall not exceed the lesser of $1,000 or 1% of the amount due on the obligation, both principal and interest, at the time of default.

Mont. Code Ann. § 71-1-320.

If Bertelsen had in fact cured his default by paying the fees and the entire amount due, then the fees Bertelsen would have been obligated to pay to reinstate the deed of trust would have been limited by the provisions of section 71-1-320. But Bertelsen did not cure his default as required, has not reinstated his deed of trust, and has not been obligated to pay fees under sections 71-1-312 & 320. Bertelsen also does not suggest he ever had the financial ability to tender the full amount due to bring the loan current, or that he would have tendered the full amount due but for the alleged excessive attorney's fees Citi charged him.

Furthermore, Bertelsen does not suggest he has actually paid any fees to Citi. The statutory scheme does not require Bertelsen to pay any fees until he reinstates the loan. Consequently, Bertelsen's contention as to what Citi has sought to charge him in fees, but not collect, does not fall within the reinstatement procedure, and does not demonstrate Citi violated either the Financing Act or the deed of trust.

Finally, Bertelsen argues Citi violated the Financing Act and the deed of trust when it failed to identify the beneficiary under the deed of trust. Bertelsen relies upon the provision of the Act which permits the trustee to proceed with a foreclosure sale if the trustee records a notice of sale which identifies the

beneficiary.  Mont. Code Ann. § 71-1-313(3)(a).  But this required disclosure of information is only a condition precedent to the trustee's conduct of a foreclosure sale.  While the failure to satisfy the condition could be grounds for terminating or invalidating a trustee sale, the failure, by itself, does not violate the Financing Act or breach the deed of trust so as to cause harm to Bertelsen.  The Financing Act does not otherwise require the trustee to disclose the identification of the beneficiary.  *Floyd v. Countrywide Home Loans, Inc.*, 2013 WL 2382604, *2 (D. Mont. 2013).  Since no trustee's sale has ever been completed for the purpose of foreclosing on the subject property, and no such sale is currently pending, Citi's failure to identify the beneficiary is of no consequence under the facts of this case.

### 3.   <u>Implied Covenant of Good Faith and Fair Dealing</u>

Citi moves for summary judgment dismissing Bertelsen's claim for breach of the implied covenant of good faith and fair dealing.  The Court agrees the claim is subject to dismissal.

As a matter of law, every enforceable contract "contains an implied covenant of good faith and fair dealing."  *Knucklehead Land Co., Inc. v. Accutitle, Inc.*, 172 P.3d 116, 121 (Mont. 2007) (citation and quotation omitted).  A breach of the covenant constitutes a breach of the contract, and a plaintiff need not first establish a breach of an express provision of the contract as a prerequisite to a

claim for a breach of the implied covenant. *McCoy v. First Citizens Bank*, 148 P.3d 677, 681 (Mont. 2006) (quotation and citation omitted). In an ordinary contract situation, a breach of the covenant entitles the claimant to contract damages only. *Story v. City of Bozeman*, 791 P.2d 767, 775 (Mont. 1990), overruled on other grounds by *Arrowhead School Dist. No. 75, Park County v. Klyap*, 79 P.3d 250, 264 (Mont. 2003).

The standard of conduct imposed by the implied covenant is "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." Mont. Code Ann. § 28-1-211; *McCoy*, 148 P.3d at 681. "Each party to a contract has a justified expectation that the other will act in a reasonable manner in its performance or efficient breach." *Story*, 791 P.2d at 775.

The implied covenant finds particular application in circumstances where one party is vested with discretionary power to affect the contractual rights of another – a power that must be exercised in good faith. *Simmons Oil Corporation v. Holly Corporation*, 852 P.2d 523, 528 (Mont. 1993). Restated, the standard of the covenant is, in substance, "a mutual promise implied in every contract that the parties will deal with each other in good faith, *and not attempt to deprive the other party of the benefits of the contract* through dishonesty or abuse of discretion in performance." *Phelps v. Frampton*, 170 P.3d 474, 482 (Mont. 2007) (citation and

quotation omitted) (emphasis added).  The initial inquiry to be made then is whether the defendant's conduct deprived the claimant of a benefit to which the claimant was entitled under the contract.  *Weldon v. Montana Bank*, 885 P.2d 511, 515 (Mont. 1994); *Floyd v. Countrywide Home Loans, Inc.*, 2013 WL2382604, *3 (D. Mont. 2013).  Where a defendant's conduct does not deprive a claimant of a contractual benefit, then the alleged conduct cannot form the basis for a breach of the implied covenant.  *Weldon*, at 515.

In *Weldon*, the borrowers sued the lender for breach of a mortgage contract, and for breach of the implied covenant of good faith and fair dealing.  The lender had executed a partial release of the mortgage which the borrowers believed violated a provision of the mortgage.  The borrowers asserted the lender's conduct also constituted a breach of the implied covenant.  But the Montana Supreme Court concluded the mortgage provision at issue did not prohibit a partial release and, therefore, the lender's conduct in executing the partial release did not deprive the borrowers of a contractual benefit to which the borrowers were entitled under the mortgage.  *Weldon*, at 515.  Absent the deprivation of a contractual benefit, the borrowers could not maintain a claim for the breach of the implied covenant.  *Id*.

Similarly, in *Floyd* this Court dismissed a claim for breach of the implied covenant on the ground that the defendant's conduct at issue did not deprive the

plaintiffs of a benefit of the contract.  In *Floyd*, the borrowers had defaulted on their loan payments under a deed of trust, and then sought to obtain the identity of the holder of the note to enable them to renegotiate with the holder and to request a loan modification.  But in *Floyd*, this Court concluded the deed of trust and promissory note did not contractually entitle the borrowers to either renegotiate the loan or to obtain the identity of the holder of the note.  Consequently, the lender and loan servicing agents' conduct in failing to accurately and honestly provide information as to the holder of the note and the loan modification process did not deprive the borrowers of any contractual benefit.  Therefore, this Court dismissed the borrower's implied covenant claim.  *Floyd v. Countrywide Home Loans, Inc.*, 2013 WL2382604, *3 (D. Mont. 2013).

Here, all of Bertelsen's arguments in support of his claim for a breach of the implied covenant of good faith and fair dealing are entirely based upon conduct which Citi allegedly engaged in during the course of his efforts to apply for either a loan modification or a loan assistance program.  But it is beyond dispute that a borrower has no right to modify or renegotiate a defaulted loan, and a lender has no obligation to provide a modification or loan assistance.  *Morrow v. Bank of America, N.A.*, 324 P.3d 1167, 1177 (Mont. 2014).  And it is undisputed that neither the subject deed of trust nor the promissory note includes an express right

13

or duty to engage in loan modification negotiations.  While Bertelsen complains about Citi's conduct during the parties' loan modification application and review processes, he has failed to identify a contractual benefit to which he is entitled and of which Citi deprived him through its alleged bad faith conduct.

Bertelsen suggests, however, there exists one specific provision of the deed of trust which affords him the contractual benefit of having Citi consider him for a loan modification.  But for the reasons discussed, the Court disagrees that the identified provision confers any benefit upon Bertelsen.

Bertelsen's argument is predicated upon a strained reading of a non-release or non-waiver of liability provision in the deed of trust.  The specific provision states as follows:

> **12. Borrower Not Released; Forbearance By Lender Not a Waiver.**  Extension of the time for payment or *modification* of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successor in Interest of Borrower.

(Doc. 38-2 at 7 of 11, ¶ 12 (emphasis added).)

Bertelsen contends this non-release provision entitled him to the contractual benefit of engaging in loan modification discussions with Citi.  In support of this contention, Bertelsen cites a decision issued in 2013 by the United States District Court, District of Arizona in *Finney v. First Tennessee Bank*, 2013 WL 1897137

14

(D. Arizona 2013).  The deed of trust in the *Finney* case contained language nearly identical to the non-release provision in Bertelsen's deed of trust.  *Id*. at *4.  In resolving a Fed. R. Civ. P. 12(b)(6) motion, the court agreed the language at least contemplated a modification, and the provision supported the borrower's asserted expectation that the lender would consider a loan modification request from the borrower.  *Finney*, 2013 WL 1897137 at *5.  Therefore, the court agreed the lender's alleged bad faith conduct in rejecting the borrower's request for a loan modification at least stated a claim under the implied covenant on the ground that the lender's alleged conduct operated to deprive the borrower of a benefit under the deed of trust.  *Id*.

The Court declines to follow the *Finney* court's analysis, which, of course, does not constitute controlling precedent in this jurisdiction.  Furthermore, the Court finds the rationale of *Finney* to be unpersuasive in that the court interpreted the intent and meaning of the non-release provision too broadly.  Although the *Finney* court recognized the language of the provision did not require the lender to modify the deed of trust, it proceeded to find the language at least contemplated the potential existence of a modification and that the "Plaintiffs could have reasonably expected that Defendants would in good faith consider Plaintiffs' modification request."  *Finney*, 2013 WL 1897137 at *5.

15

Contrary to the *Finney* court's conclusion, this Court finds the specific language of the non-release provision does not confer a benefit upon Bertelsen. Although the language references an "[e]xtension of the time for payment or modification of amortization" schedule, the clear focus of the language is to put the borrower on notice that in the event the lender chose to undertake either of these actions, the borrower would not somehow be relieved of liability. But there is nothing in the language of the provision that can be read as requiring the lender to consider a borrower's request for a loan modification, or to engage in modification negotiations – let alone agree to a modification. Nor is there anything in the provision that would lead the borrower to reasonably expect the lender would in fact consider a modification request or engage in modification negotiations. The provision does not contractually confer upon Bertelsen the reasonably expected benefit he suggests.

Based on the foregoing, the Court concludes Bertelsen has not identified any action or conduct committed by Citi which attempted to deprive him of any contractual benefit conferred upon Bertelsen in either the deed of trust or the promissory note. Therefore, Bertelsen's claim under the implied covenant of good faith and fair dealing is subject to dismissal. *See Weldon v. Montana Bank*, 885 P.2d 511, 515 (Mont. 1994); *Floyd v. Countrywide Home Loans, Inc.*, 2013

16

WL2382604, *3 (D. Mont. 2013).

**B.      Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing**

Bertelsen further characterizes his claim for the breach of the implied covenant as a tort claim.  A tort claim for breach of the implied covenant is only viable in exceptional circumstances involving a "special relationship" between the contracting parties.  *Ammondson v. Northwestern Corp.*, 220 P.3d 1, 16 (Mont. 2009) (identifying the necessary elements of a special relationship).

But significantly, in a tort claim for a breach of the implied covenant, the standard of conduct for establishing a breach is the same as that for other contracts.  *Story*, 791 P.2d at 776.  Thus, for the reasons discussed, Bertelsen has failed to establish that Citi engaged in any acts or omissions in violation of the standard of conduct imposed under the implied covenant.  Therefore, Bertelsen's tort claim is similarly subject to dismissal.

**C.      Constructive Fraud**

Citi moves for summary judgment dismissing Bertelsen's claim for constructive fraud.  Constructive fraud is statutorily defined in Montana as:

> (1) any breach of duty that, without an actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under the person in fault by misleading another person to that person's prejudice or to the prejudice of anyone claiming under that person; or

(2) any act or omission that the law especially declares to be fraudulent, without respect to actual fraud.

Mont. Code Ann. § 28-2-406.  A prima facie claim for constructive fraud requires facts supporting allegations of:

> a representation; the falsity of the representation; the materiality of the representation; the speaker's knowledge of the representation's falsity or ignorance of its truth; the hearer's ignorance of the representation's falsity; the hearer's reliance upon the truth of the representation; the hearer's right to rely upon the representation; and the hearer's consequent and proximate injury or damage caused by reliance on the representation.

*White v. Longley*, 244 P.3d 753, 759 (Mont. 2010).

In substance, Bertelsen's claims and arguments assert Citi made numerous misrepresentations, and provided misleading information relative to:  (1) his eligibility for, and the availability of, loan modifications and assistance programs, (2) the documents he needed to submit in support of his applications for loan modifications and assistance, and (3) the status, at different times, of his applications and Citi's review of those applications.  Bertelsen cites to various misleading representations allegedly made by Citi to Bertelsen during the course of his efforts to obtain a loan modification.

A necessary element of any claim for constructive fraud requires that one party must gain an advantage over the other party through its misrepresentations. *Mattingly v. First Bank of Lincoln*, 947 P.2d 66, 73 (Mont. 1997).  *See also*

18

*Grizzly Security Armored Express, Inc. v. Bancard Services, Inc.*, 384 P.3d 68, 80 (Mont. 2016).  Citi argues that Bertelsen has offered no evidence on which a jury could conclude Citi gained an advantage over Bertelsen, to his detriment, as a result of any of its alleged misrepresentations.

Bertelsen retorts that Citi gained an advantage in that its conduct extended the loan modification negotiation process thereby allowing his debt and arrearages to grow to over $250,000.  Indeed, where a borrower continues to make payments on the loan obligation rather than pursue options with other lenders, or to proceed with a short sale or foreclosure, the lender gains an advantage by virtue of its delays and its provision of misleading information to the borrower.  *Morrow v. Bank of America, N.A.*, 324 P.3d 1167, 1184 (Mont. 2014).  But here, Bertelsen did not continue to make any payments towards his loan obligation and, therefore, Citi did not gain any advantage because it did not collect additional payments from Bertelsen.  Furthermore, Citi is not entitled to pursue a deficiency judgment against Bertelsen for any additional amounts due following a foreclosure sale. Mont. Code Ann. § 71-1-317; *First State Bank of Forsyth v. Chunkapura*, 734 P.2d 1203, 1208 (Mont. 1987).  Therefore, it cannot be said that Citi gained any advantage over Bertelsen as a result of any additional growth of debt and arrearages that was not otherwise allowed by the terms of the loan.

Bertelsen offers the correlative argument that Citi "sought to take advantage" of him by charging him attorney's fees in excess of the limit set forth in Mont. Code Ann. § 71-1-320. But Bertelsen has not paid any attorney's fees Citi has charged to him. Therefore, Citi has not actually gained an advantage in the course of the loan modification review process by charging, but not collecting, attorney's fees. Absent evidence of any advantage that Citi gained, Bertelsen's constructive fraud claim is subject to dismissal.

Furthermore, to the extent Bertelsen suggests Citi may yet gain an advantage through its attorney's fees charges if and when it proceeds with a foreclosure, no such advantage would be gained by virtue of Citi's conduct. Rather, regardless of Citi's conduct and the events that transpired between Citi and Bertelsen in the course of the loan modification review process, Citi will be statutorily authorized to collect attorneys' fees, but only in the limited amount set forth in Mont. Code. Ann. § 71-1-320. Thus, any collection of attorneys' fees which are statutorily authorized in a foreclosure would not be an advantage Citi will gain by virtue of its conduct. They are, instead, fees Bertelsen would owe as a result of his default on the loan and the foreclosure.

Bertelsen has not otherwise identified any further advantage Citi may have gained through its alleged misleading conduct while reviewing Bertelsen's

20

applications for a loan modification.  Absent an advantage that Citi gained,

Bertelsen's claims for constructive fraud are subject to dismissal.  *See Purcell v.*

*Automatic Gas Distributors, Inc.*, 673 P.2d 1246, 1251 (Mont. 1983).

### D.    Punitive Damages and Injunctive Relief

Citi moves for summary judgment dismissing Bertelsen's claim for an

award of punitive damages on the ground that all of his underlying claims for

relief are subject to dismissal.  In the absence of a viable theory of liability

resulting in an award of actual damages, a plaintiff is not entitled to recover

punitive damages, and the claim should be dismissed.  *Peterson v. Eichhorn*, 189

P.3d 615, 624 (Mont. 2008), and *Doll v. Major Muffler Centers, Inc.*, 687 P.2d 48,

55 (Mont. 1984).  Because the Court is dismissing all of Bertelsen's claims for

relief, his claim for punitive damages is also subject to dismissal.

Bertelsen's pleading requests the Court issue a temporary restraining order

and a preliminary injunction preventing Citi from proceeding with a foreclosure

sale pending disposition of this lawsuit.  Citi moves for summary judgment

dismissing Bertelsen's claim for injunctive relief on the basis that all his legal

claims for relief are subject to dismissal thereby leaving no basis for injunctive

relief.  The Court agrees.

Under Montana law, injunctive relief is authorized by Mont. Code Ann. §

27-19-201.  But to obtain an injunction an applicant must demonstrate the existence of a legitimate cause of action and a likelihood of succeeding on the merits of the claim.  *Mack v. Anderson*, 384 P.3d 730, 734 (Mont. 2016).  Because the Court is dismissing Bertelsen's claims for relief, he has neither a legitimate cause of action, nor a likelihood of success on any of his claims.  Therefore, his claim for injunctive relief is denied.

## IV.   Conclusion

Based on the foregoing, IT IS HEREBY ORDERED Citi's motion for summary judgment is GRANTED, and Bertelsen's claims for relief are DISMISSED.  The Clerk of Court is directed to enter judgment accordingly in favor of Citi.

IT IS FURTHER ORDERED that all other pending motions are DENIED as moot, all remaining pretrial deadlines are VACATED, and the April 13, 2017 final pretrial conference and the April 24, 2017 jury trial are VACATED.

DATED this 7th day of April, 2017.

Jeremiah C. Lynch
United States Magistrate Judge