

FILED

JUL 26 2017

Clerk, U S District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| JONATHAN CHARLES BERTELSEN,<br><br>Plaintiff,<br><br>vs.<br><br>CITIMORTGAGE, INC., and JOHN DOES 1-10,<br><br>Defendants. | CV 16-2-BU-JCL<br><br>ORDER |

Following the entry of final judgment in its favor, Defendant CitiMortgage, Inc. moves to recover $296,569.87 in attorney fees incurred in defending against Plaintiff Jonathon Bertelsen's claims. CitiMortgage's motion is granted to the extent set forth below.

I. **Background**

Bertelsen commenced this action in state court in December 2015, alleging breach of contract, violations of Montana's Consumer Protection Act, and tort claims based on CitiMortgage's alleged wrongful failure to modify the terms of his home mortgage loan. Bertelson also sought declaratory and injunctive relief prohibiting CitiMortgage from foreclosing on his property. CitiMortgage

1

removed the case to this Court based on diversity jurisdiction, and ultimately prevailed on summary judgment.

Final judgment was entered in CitiMortgage's favor on April 7, 2017, and CitiMortgage filed the pending motion for attorney fees two weeks later, on April 21, 2017. CitiMortgage seeks fees under Federal Rule of Civil Procedure 54, as authorized by Mont. Code Ann. § 28-3-704 and the terms of the promissory Note and Deed of Trust between the parties.

## II. Legal Standards

Where, as here, federal jurisdiction is based on diversity of citizenship, a motion for an award of attorney fees is governed by federal procedural law and state substantive law. See *Mangold v. California Public Util. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995). The procedural requirements applicable to a motion for attorney fees are set forth in Fed. R. Civ. P. 54, which states that the motion must:

> (i) be filed no later than 14 days after the entry of judgment; (ii) specify the judgment and the statute, rule or other grounds entitling the movant to the award; (iii) state the amount sought or provide a fair estimate of it; and (iv) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made.

Fed. R. Civ. P. 54(d)(2)(B).

Montana follows the general American Rule, pursuant to which a prevailing

party is not entitled recover attorney fees unless expressly provided for by statute or contract. *Mountain West Farm Bureau Mut. Ins. Co. v. Hall*, 2001 Mt 115, 18 (Mont. 2001). When "one party to the contract...has an express right to recover attorneys' fees from any other party to the contract..., then in any action on the contract...the prevailing party...is entitled to recover reasonable attorneys' fees from the losing party or parties." Mont. Code Ann. § 28-3-704. Where there is a contractual provision for attorney fees, the right created is reciprocal. See e.g. *First Citizens Bank v. Sullivan*, 200 P.3d 39, 46 (Mont. 2008).

Generally speaking, whether to award fees is within the discretion of the court. *In re Marraige of Szafryk*, 232 P.3d 361, 365 (Mont. 2010). But when a contract "requires an award of attorney's fees and the contract is conscionable," the court "lacks discretion to deny attorney's fees." *Szafryk*, 232 P.3d at 365. See also *In re Estate of Burrell*, 245 P.3d 1106, 1111-1112 (Mont. 2010).

### III. Discussion

There is no dispute that CitiMortgage has satisfied the procedural requirements of Fed. R. Civ. P. 54(d)(2)(B). CitiMortgage timely filed its motion on April 21, 2017 – within 14 days of the final judgment entered on April 7, 2017. The motion states the amount of attorney fees sought, and specifies that CitiMortgage claims it is entitled to fees based on terms of the Note and Deed of

Trust between the parties.

The Note signed by Bertelsen contains a provision for "Payment of Note Holder's Costs and Expenses," which reads as follows:

> If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

(Doc. 38-1, at 3).

The Deed of Trust further provides that the "Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees...." (Doc. 39-2, at 7).

CitiMortgage argues it is entitled to attorney fees as the prevailing party based on these provisions in the Note and Deed of Trust because Bertlesen's claims related directly to CitiMortgage's enforcement and protection of its interest in the Note and Deed of Trust.

Bertelsen does not dispute that CitiMortgage is the prevailing party, but maintains it is not entitled to attorney fees for three reasons. First, Bertelsen takes the position that the Small Tract Financing Act (STFA) precludes an award of attorney fees. Second, Bertelsen argues that the Note and Deed of Trust do not

authorize a fee award. Third, Bertelsen contends it would be inequitable and unreasonable to award CitiMortgage its fees. None of these arguments is persuasive.

Bertelsen first argues that the STFA prohibits CitiMortgage from recovering attorney fees. He relies in particular on the last sentence of Mont. Code Ann. § 71-1-320, which provides that "[i]n no event shall trustees' fees and attorneys' fees be charged to a grantor on account of any services rendered prior to the commencement of foreclosure." Although a foreclosure sale of Bertelsen's residence was originally scheduled for February 2016, Citimortgage cancelled the sale and never recommenced the foreclosure process. Because CitiMortgage did not commence the foreclosure process during this lawsuit, Bertelsen argues attorney fees are not allowed.

This argument overlooks the rest of Mont. Code Ann. § 71-1-320, however, which makes clear that it applies only to limit attorney fees incurred in connection with foreclosure proceedings. The statute's opening sentence states that "[r]easonable trustees' fees and attorneys' fees to be charged to the grantor in the event of foreclosure by advertisement and sale shall not exceed, in the aggregate, 5% of the amount due on the obligation, both principal and interest, at the time of the trustee's sale." Mont. Code Ann. § 71-1-320. Where "no foreclosure by

5

advertisement and sale has been commenced," Mont. Code Ann. § 71-1-320 "simply does not apply." *In re O'Connor*, 413 B.R. 726, 733 (D. Mont. 2008) (rejecting argument that STFA precludes attorney fees in bankruptcy proceedings).

Here, CitiMortgage is not seeking to recover any attorney fees incurred in connection with foreclosure proceedings on Bertelesen's property. CitiMortgage is instead seeking to recover the attorney fees it incurred in defending against Bertelson's claims in this case. Because CitMortgage is not seeking attorney fees incurred in connection with foreclosure proceedings, Mont. Code Ann. § 71-1-320 simply does not apply.

Bertelsen next argues that CitiMortgage is not entitled to attorney fees under the terms of the Note and Deed of Trust. The Note provides for the recovery of attorney fees incurred "in enforcing this Note," and the Deed of Trust authorizes the recovery of attorney fees incurred "for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument." Bertelsen maintains that CitiMortgage was doing neither of these things while defending against his lawsuit. Bertlesen points out that he was primarily seeking money damages for CitiMortgage's allegedly tortious conduct, and claims he was not attempting to directly affect CitiMortgage's rights under the Note and Deed of Trust. As Bertelsen thus characterizes it, CitiMortgage was not enforcing the Note

or protecting its interest in the property and rights under the Deed of Trust when it incurred the attorney fees at issue.

While Bertelsen did allege several state law claims for money damages based on CitiMortgage's allegedly tortious conduct, his Complaint also included a claim for declaratory and injunctive relief. (Doc. 9, at 12). In particular, Bertelsen asked for "declaratory relief that any future foreclosure sale of his home is void," and sought to enjoin the foreclosure sale that was set take place in February 2016. (Doc. 9, at 12). Bertelsen also sought injunctive relief barring "any future foreclosure sale for any time necessary for the Court to make its determination as to the loan servicing issues and foreclosure issues, as alleged in this matter." (Doc. 9, at 12).

There can be no doubt that in defending against these claims, CitiMortgage was protecting its security interest in the property and rights under the Deed of Trust. According to CitiMortgage, Bertelsen's loan was severely delinquent by the time he filed his lawsuit. By defending against Bertelsen's lawsuit, CitiMortgage was protecting its ability to enforce its security interest by foreclosing on the property based on Bertelsen's default. Had Bertelsen prevailed on his claims for declaratory and injunctive relief, CitiMortgage's security interest in the property would have been adversely affected, to say the least.

By the same logic, Bertelsen also sought to limit CitiMortgage's rights under the Note. The Note required Bertelsen pay the $305,000 he borrowed and incorporated the terms of the Deed of Trust, including its provisions authorizing foreclosure in the event of a default. (Doc. 38-1). Bertelsen's claims for declaratory and injunctive relief effectively sought to prevent CitiMortgage from recovering the amount due under the Note from the proceeds of a foreclosure sale. By defending against those claims, CitiMortgage was enforcing its rights under the Note. Because CitiMortgage was enforcing the Note and protecting its interest in the property and rights under the Deed of Trust while defending against Bertelsen's lawsuit, attorney fees are authorized under the terms of the Note and Deed of Trust.

Even assuming attorney fees are allowed, Bertelsen argues it would be manifestly unjust to award them in this case. For support, Bertelsen relies on Ninth Circuit authority holding that a federal court can "refuse to enforce a contractual attorney's fees provision if an award of fees would be 'inequitable and unreasonable.'" *Anderson v. Melwani*, 179 F.3d 763, 766 (9th Cir. 1999) (quoting *DeBlasio Contr. Inc. v. Mountain States Constr. Co.*, 588 F.2d 259, 263 (9th Cir. 1978)). In *DeBlasio,* the court concluded it would have been unjust to award fees where both parties had acted improperly and were to blame for the dispute.

*DeBlasio*, 588 F.2d at 263.

As set forth above, however, "the propriety of awarding and calculating attorneys' fees in a federal lawsuit based on state substantive law is governed by state law." *Strickland v. Truckers Express, Inc.*, 2007 WL 496368, *4 (D. Mont. Feb. 12, 2007) (citing *Mangold*, 67 F.3d at 1478 and *Champion Produce Inc. v. Ruby Robinson Co., Inc.*, 342 F.3d 101 (9th Cir. 2003)). Even if federal law provided the appropriate standard, *Anderson* and *DeBlasio* are distinguishable because there is no evidence that CitiMortgage acted improperly.

In fact, CitiMortgage argues that under Montana law, the Court lacks discretion to deny its motion for attorney fees. The Montana Supreme Court has held that when a contract "requires an award of attorney's fees and the contract is conscionable," the court "lacks discretion to deny attorney's fees." *Szafryk*, 232 P.3d at 365. See also *In re Estate of Burrell*, 245 P.3d 1106, 1111-1112 (Mont. 2010). CitMortgage takes the position that the Note and Deed of Trust are both conscionable and require an award of attorney fees.

While the Court agrees there is no indication that the Note and Deed of Trust are unconscionable, they do not necessarily require that fees be awarded. The Deed of Trust simply gives the note holder the right to recover attorney fees under certain circumstances and the Note states that the lender may recover

9

attorney fees incurred in connection with protecting its interest in the property and its rights under the Deed of Trust. Whether to award CitiMortgage its attorney fees pursuant to the terms of the Note and Deed of Trust remains within this Court's discretion.

Bertelsen argues the Court should exercise its discretion to deny fees because CitiMortgage did not advise him that the Note and Deed of Trust contained attorney fee provisions, or put him on notice earlier in the litigation that it would be seeking fees. But the fact that CitiMortgage did not make Bertelsen aware of the two fee provisions does not necessarily mean it would be unreasonable to permit CitiMortgage to recover its attorney fees. This is particularly true since Bertelsen was represented by a law firm of eight attorneys, presumably knowledgeable in Montana contract law, that prepared the complaint on his behalf. And the firm has prosecuted a significant number of similar cases in this Court arising from the servicing of home mortgage loans. Contractual attorney fees provisions are enforceable under Montana law, and Bertelsen does not point to any authority for the proposition that CitiMortgage's failure to advise Bertelsen of those provisions in this case renders them unenforceable or makes a fee award unjust.

Bertelsen next argues it would be unreasonable for the Court to award fees

because he is an individual with limited financial resources and CitiMortgage is a "financial giant" that can easily afford to pay its own attorneys. (Doc. 110, at 10). The fact that there are economic disparities between the parties does not necessarily make a fee award unjust. Rather, the Court finds that the economic disparity between the parties is a factor more properly considered when assessing the reasonableness of the requested fee award.

As the prevailing party, CitiMortgage is entitled to an award of reasonable attorney fees based on the provisions in the Note and Deed of Trust. CitiMortgage is asking for $296,569.87 in attorney fees, which it claims is a reasonable amount based on the time and labor required.

The Montana Supreme Court has endorsed a methodology for awarding and calculating reasonable attorney fees that is similar, in most respects, to the lodestar method established by the United States Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). See, *Strickland,* 2007 WL 496368 *4 (citing *Morning Star Entrprises, Inc. v. R.H. Grover, Inc.*, 805 P.2d 553 (Mont. 1991) and *Western Media, Inc. v. Merrick*, 757 P.2d 1308 (Mont. 1988)). This method requires that the Court first identify a lodestar amount, which is accomplished by multiplying the number of hours reasonably expended by a reasonable hourly rate. *Hensley*, 461 U.S. at 433.

"The party seeking fees bears the burden of documenting the hours expended in the litigation and must submit evidence supporting those hours and the rates claimed." *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 945-46 (9th Cir. 2007). When assessing the reasonableness of the hours expended, the court is free to "exclude from the fee request any hours that are 'excessive, redundant, or otherwise unnecessary.'" *Welch*, 480 F.3d at 946 (*quoting Hensley*, 461 U.S. at 433).

With regard to identifying a reasonable hourly rate, the court is to consider "the experience, skill, and reputation of the attorney requesting fees." *Welch*, 480 F.3d at 946 (*quoting Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986)). Attorney fees are calculated "according to prevailing market rates[]" in the relevant legal community." *Strickland*, 2007 WL 496368 *6. This means that the court should "apply the market rate of attorneys practicing in the forum community, not the rates out-of-state counsel charge." *Srickland,* 2007 WL 496368 *6. The party seeking fees bears of the burden of establishing the applicable market rate, which can be accomplished by way of affidavits from the attorney performing the work or another attorney who can testify to the current market rate. *Strickland*, 2007 WL 496368 *6.

The reasonableness of attorney fees must be assessed under the facts of each

case. *Plath v. Schonrock*, 64 P.3d 984, 991 (Mont. 2003). In deciding what constitutes reasonable attorney fees, Montana courts typically consider the following factors:

> (1) the amount and character of the services rendered; (2) the labor, time and trouble involved; (3) the character and importance of the litigation in which the services were rendered; (4) the amount of money or the value of the property to be affected; (5) the professional skill and experience called for; (6) the attorneys' character and standing in their profession; and (7) the results secured by the services of the attorneys."

*Plath*, 64 P.3d at 991 (citing *Swenson v. Janke*, 908 P.2d 678, 682-83 (Mont. 1995)). See also *Morning Star Enterprises, Inc. v. R.H. Grover, Inc.*, 805 P.2d 553, 559 (Mont. 1991) (applying essentially the same factors in a breach of contract case). These factors are not exclusive, and the Court may consider other factors in reaching a decision on reasonable attorney fees. *Morning Star Enterprises*, 805 P.2d at 558.

Here, CitiMortgage seeks to recover a total of $296,569.87 in attorney fees, as set forth in the affidavits and supporting documentation provided by defense counsel. CitiMortgage has submitted the affidavit of local defense counsel Michelle Sullivan, along with copies of invoices documenting the work she performed on the case while employed by Holland & Hart and at Sullivan Miller. Sullivan billed CitiMortgage at the rate of $215 an hour while employed by Holland & Hart, and $200 an hour as a partner at Sullivan Miller. Sullivan billed

CitiMortgage a total of $17,716.50 in attorney fees and expenses for the nearly 87 hours she spent working on the case from the time she was retained in January 2016 through April 15, 2017.[1] (Doc. 102, at 4; 102-1; 102-2).

CitMortgage has also submitted a supporting affidavit from defense counsel Regina J. McClendon, setting forth the time she and other attorneys and paralegals at the California firm of Locke Lord LLP spent on the case, along with their respective hourly rates and expenses incurred. McClendon billed CitiMortgage at the rate of $373.50 an hour, and the other attorneys who worked on the case billed out at rates ranging from to $279 to $517.50 per hour. (Doc. 103, at 3-6). CitiMortgage was billed for all paralegal work at rates between $150 and $210 per hour. Between January 2016 and April 2017, Locke Lord billed CitiMortgage a total of $278,853.37 for approximately 800 hours of attorney and paralegal work, and expenses.[2] (Doc. 103, at 10; 103-1; 103-2).

Bertelsen agrees that the Sullivan's hourly rates are reasonable, but contends the rates charged by Locke Lord's attorneys and paralegals are excessive.

---

[1] It appears this includes hours worked in April 2017, which Sullivan had not yet billed when she completed her declaration on April 21, 2017. (Doc. 102, at 4). Presumably, Sullivan has since billed CitiMortgage for those hours.

[2] It appears this includes hours worked in April 2017, which Lock Lord had not yet billed when McLendon completed her declaration on April 21, 2017. (Doc. 103, at 9). Presumably, Lock Lord has since billed CitiMortgage for those hours.

The Court agrees. Although CitiMortgage points out that it negotiated discounted rates for each of the Locke Lord attorneys and paralegals who worked on the case, it has not submitted any evidence establishing that those discounted rates are in line with the prevailing rates in the District of Montana for similar services by lawyers of reasonably comparable skill, experience, and reputation. Sullivan is a Montana attorney of comparable skill, experience, and reputation. She charges $200 to $215 per hour – far less than the discounted hourly rates of between $279 and $517.50 charged by Lorde Lock's attorneys in this case. The Court is familiar with prevailing rates in the Montana legal community, and finds that the hourly rates charged by Sullivan are reasonable. Because CitiMortgage has not met its burden of demonstrating that the rates charged by the other attorneys on the case are reasonable for the Montana legal community, the Court will exercise its discretion and assign a rate of $200 per hour for all Locke Lord attorney services. The $150 to $200 hourly rates charged by Lorde Lock for paralegal services are similarly excessive for the Montana community. The Court will assign a reasonable hourly rate of $75 for all paralegal services performed in this matter.

Bertelsen also argues that CitiMortgage overstaffed the case, and challenges the number hours billed by Locke Lord as excessive. Defense counsel have submitted itemized statements of the time spent and tasks performed in litigating

the case from start to finish. Bertelsen does not specifically object to the number of the hours billed by Sullivan, and CitiMortgage is entitled to recover the $17,716.50 in attorney fees and expenses requested for her services.

All told, Locke Lord billed approximately 700 hours of attorney time and approximately 100 hours of paralegal time on the case. The Court is familiar with the proceedings in this matter – from the filing of the complaint to its resolution on summary judgment just prior to trial. The Court has reviewed the itemized statements provided by defense counsel and agrees with Bertelsen that the nearly 800 hours billed by Lorde Lock is excessive given the scope, nature, and complexity of the case. Bertelsen's claims did not involve particularly difficult or unusual issues, and defending against them did not call for professional skill and experience beyond that possessed by a normally competent Montana attorney. The Court will exercise its discretion and reduce the number of hours for which CitiMortgage may recover fees for attorney and paralegal work by roughly half, and eliminate recovery for any claimed expenses. Taking these adjustments into account, CitiMortgage is entitled recover fees for 350 hours of attorney time at a rate of $200, for a total of $70,000, and 50 hours of paralegal time at a rate of $75, for a total of $3,750. Adding these amounts, along with Sullivan's fees, the lodestar calculation comes to $91,466.50.

As noted above, Bertelsen argues it would unreasonable and inequitable to award fees in this case because CitiMortgage is a large financial institution and he is an individual facing the potential loss of his home. While the Court rejects the argument that such disparities make a fee award wholly inappropriate, it does find that an equitable reduction of the fee award is warranted. The Court will reduce the fee award by an additional 50 percent, bringing the total amount of the attorney fee award in this case to $45,733.25. The Court sees no need to adjust this figure any further based on any other factors.

## IV. Conclusion

Accordingly, IT IS ORDERED that Defendants' motion for attorney fees is GRANTED to the extent set forth above. The Defendants are entitled to recover from the Plaintiff attorney fees in the total amount of $45,733.25.

DATED this 26th day of July, 2017.

Jeremiah C. Lynch
United States Magistrate Judge